# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DARRELL REVIERE** | * | **CIVIL ACTION NO. 07-1290** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Darrell Reviere, born February 18, 1955, filed an application for supplemental security income on April 28, 2005, alleging disability as of April 15, 2005, due to diabetes and hypertension.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Thomas Quaid dated November 13, 2002**. Claimant was seen for an episode of chest discomfort. (Tr. 164). He had been treated for hypertension and diabetes mellitus for the prior three years. His medications included Metformin, Lotrel, and Avandia.

On examination, claimant was 5 feet 10 inches tall, and weighed 209 pounds. His blood pressure was 130/110 supine and 142/104 sitting in the left arm, and 140/102 sitting and 138/112 standing in the right . (Tr. 165). His heart had regular rhythm with normal S1 and S2, and no abnormal cardiac sounds.

Claimant stopped the treadmill after 9 minutes 45 seconds because of fatigue and shortness of breath, but had no significant chest discomfort. The test was negative for myocardial ischemia.

The assessment was a single episode of nocturnal chest discomfort, most likely gastroesophageal reflux; essential hypertension, and essential Type II diabetes and moderate obesity. Dr. Quaid prescribed Atenolol and Protonix.

**(2) Report from Dr. Chaillie P. Daniel dated November 5, 2003**. Claimant was seen on two occasions for hypertension and diabetes. (Tr. 168). He had associated chest pain on one occasion. His diagnoses were mild hypertensive disease

and mild diabetes. He was adequately controlled with medical therapy.

On November 5, 2002, claimant was seen for chest discomfort. He was referred to cardiology for a treadmill test, which revealed normal exercise capacity and no significant changes. He was discharged from cardiology without any diagnosis of heart disease.

Based on his determination, Dr. Daniel opined that claimant's diabetes, hypertension, or heart condition was very minimal.

**(3) Consultative Examination by Dr. John Canterbury dated December 20, 2003**. Claimant complained of bad heart disease, bad diabetes, and chest pain. (Tr. 169). He also reported that he had developed pain in his left lower extremity over the prior several weeks. Additionally, he complained of weekly tension headaches, which were relieved by Goody powders. His medications included Avandia, Atenolol, and Lotrel.

Claimant was able to perform most of his activities of daily living, including feeding and dressing himself. He was able to perform all household chores.

On examination, claimant was 68 1/4 inches tall, and weighed 199 pounds. (Tr. 170). His blood pressure was 128/89. He ambulated with a slight left-sided limp that tended to get worse when he was observed. He was able to get on and off of the examination table and up and out of the chair without problems.

Claimant's hearing and speaking appeared to be intact. His visual acuity was 20/40 in both eyes. His heart had regular rate and rhythm, with no murmurs, rubs, or gallops.

On spine and extremities exam, claimant did not appear to need an assistive device. (Tr. 171). His grip strength was 5/5. Fine and gross motor manipulations were intact. Range of motion was intact for all joints.

Neurologically, claimant's motor strength was 5/5 in the extremities. Sensory and cerebellar exam were essentially intact. Cranial nerves were intact. Deep tendon reflexes were +2 throughout the extremities.

Dr. Canterbury's impression was atypical chest pain, diabetes, and high blood pressure. He noted that claimant's blood pressure was within normal limits that day. He determined that claimant could sit, stand, and walk without difficulty, and lift objects of moderate weight. Hearing, speaking, and handling of objects appears to be intact.

Dr. Canterbury noted that there were certain inconsistencies in claimant's examination. (Tr. 172). Specifically, his limp that was not mentioned tended to get worse with observation. Also, his chest pain was certainly atypical from any type of chest pain that one would expect to find with ischemia. However, Dr. Canterbury noted that claimant did have risk factors for heart disease.

**(4) Records from Doctor's Hospital of Opelousas dated June 10, 2005**. Claimant complained of dizziness, weakness, and extremity numbness. (Tr. 175, 178). The assessment was poorly controlled diabetes mellitus and a history of hypertension. (Tr. 176). He was instructed to continue his medications and add Glucotrol. (Tr. 181).

**(5) Internal Medicine Consultative Examination by Dr. Samuel J. Stagg, Jr., dated July 29, 2005**. Claimant had been on oral medications off and on for diabetes when he could afford it. (Tr. 182). His blood sugars ran high. He also was hypertensive, but had not taken any medications for his high blood pressure for about two years. Additionally, he complained of dizzy spells and intermittent knee problems.

Claimant reported that he had last worked in security. He had stopped working when that job ceased to exist. His medications included Glipizide 5 mgs.

On examination, claimant's mental status appeared adequate. He had no problems hearing or speaking. He got in and out of a chair without difficulty. His gait was normal, and he walked without benefit of any aids.

Claimant's blood pressure was 140/98, pulse was 100, and respirations were 18. He was 5 feet 9 inches tall, and weighed 189 pounds. His vision was 20/50 with glasses. (Tr. 183).

Heart had a sinus tachycardia. Claimant had no cardiac murmurs, rubs, or thrills. He had no apparent cardiac enlargement. Heart tones were good.

Claimant had no edema of the extremities. His pulses were bilateral, equal, and normal. His reflexes were bilateral, equal, and physiologic. No pathologic reflexes were present.

Claimant had no apparent muscle weakness or atrophy. His grip, dexterity, and grasping ability appeared normal. He had normal range of motion of the upper extremities.

Straight leg raising was normal. Claimant had normal range of motion of the right knee. He was able to extend the left knee 180 degrees, and flex it 120 degrees. Essentially, he had normal range of motion of the left lower extremity.

Claimant's vibratory and fine touch sensation was normal. He walked on his toes and heels with a little difficulty, but managed. He had normal range of motion of the lumbosacral spine.

X-rays of the chest showed a CT ratio of 14-29 centimeters. The heart shadow and bony structure were normal. Lung fields were clear.

Dr. Stagg's impressions were diabetes mellitus, non-insulin dependent; hypertension, etiology undetermined, moderate to severe, and previous surgery of the left knee, previous trauma of the left leg.

**(6) Residual Functional Capacity Assessment (Physical) dated August 12, 2005**. The examiner determined that claimant had no exertional limitations. (Tr. 185). He had no postural or manipulative limitations. (Tr. 186-87). He was limited as to far visual acuity, but was otherwise unlimited in vision. (Tr. 187). He had no communicative or environmental limitations. (Tr. 188).

**(7) Records from LSU Medical Center of Lafayette dated September 5, 2005 to October 10, 2006**. On September 5, 2005, claimant complained of depression. (Tr. 240). He had threatened suicide. He had been out of his medications for two weeks. (Tr. 233). The impression was acute adjustment reaction and psychosocial dysfunction, unspecified viral hepatitis C, depressive disorder, not elsewhere classified, diabetes mellitus type II without complication, not stated as uncontrolled, and essential hypertension. (Tr. 231). He was transported to the Lighthouse Shelter. (Tr. 237).

On January 19, 2006, claimant complained of mid-chest pain. (Tr. 226). An ECG and EKG were normal. (Tr. 224, 229). The assessment was diabetes and hypertension. (Tr. 227).

On April 3, 2006, claimant's diabetes mellitus was poorly controlled. (Tr. 218). His assessment on May 1, 2006, was type II diabetes mellitus, hypertension,

dyslipidemia, and tobacco abuse. (Tr. 213). His diabetes was well-controlled on July 13, 2006. (Tr. 209). A retinal screening was negative. (Tr. 200).

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on December 6, 2006, claimant was 51 years old. (Tr. 244). He reported that he was 5 feet 10 inches tall and weighed 215 pounds. (Tr. 247). He had gone to school in special education until he was 17 and a half years old. (Tr. 245, 249). He stated that he could not read and write very well. (Tr. 245).

Claimant testified that he had last worked as a security guard at a truck stop casino. (Tr 246). He stated that the machines were taken out, and he no longer had a job. He had not worked since, because he had no transportation. He had also worked as a garbage collector for the city of Eunice from 1976 to 1993, as a galley hand for an offshore catering company in 1999, and as a correctional officer at Angola. (Tr. 252, 256).

As to complaints, claimant testified that he had type II diabetes and high blood pressure. (Tr. 247). He also reported that he had injured his left leg on the back of a garbage truck in 1976, for which he had had knee surgery and ligament repair. He stated that he was being treated at University Medical Center for diabetes and high blood pressure.

8

Claimant said that he was not having any symptoms from his diabetes. (Tr. 248). He stated that he had fainting spells every so often.

Regarding limitations, claimant testified that he could walk about two or three blocks. He stated that it took a while to stoop and climb. He said that he had been depressed since his had mother passed away, but was not seeing any doctors for that. (Tr. 248-49).

Claimant testified that he was taking medications for his diabetes and high blood pressure. (Tr. 249). He stated that he had tingling and numbness in his legs. He also reported that he sometimes saw spots in his eyes. (Tr. 250).

**(9) Administrative Hearing Testimony of Joseph Dangler**. Claimant's brother-in law, Joseph Dangler, testified that claimant had "a lot" of depression and did not understand a lot of things. (Tr. 254-55). He also stated that claimant complained of leg pain and dizziness. (Tr. 255). He reported that claimant had trouble walking for any distance.

**(10) Administrative Hearing Testimony of Lester Soileau, Vocational Expert**. Mr. Soileau described claimant's past work as a kitchen helper as unskilled and medium; a security guard as semi-skilled and light; a newspaper carrier as unskilled and light; a correctional officer as semi-skilled and medium; a garbage collector as unskilled and very heavy, and pipeline layer as unskilled and very heavy.

(Tr. 258). He testified that claimant, at age 51, was approaching advanced age under the Social Security regulations. (Tr. 260).

**(11) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ did not apply the correct legal standards in determining the ultimate issues, particularly regarding the testimony from him and all treating physicians. Additionally, he argues that the ALJ arbitrarily relied on the grids. Further, he asserts that the ALJ erred in assessing claimant's credibility.

As to the first argument, claimant, relying on cases from outside of the Fifth Circuit, asserts that the he does not have the burden of establishing disability "beyond a reasonable doubt." [rec. doc. 11, p. 5]. However, it is the claimant's burden to satisfy the first four steps of the sequential evaluation process, not the Commissioner's. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). In any event, substantial evidence supports the ALJ's finding.

Specifically, claimant argues that the ALJ failed to apply the proper standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). [rec. doc. 11, pp. 6-7]. This standard is as follows: "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." (emphasis added). However, the record

reflects that the ALJ properly applied this standard. (Tr. 13). The ALJ's finding is supported by the Residual Functional Capacity Assessment, which shows that claimant had no exertional limitations. (Tr. 185). Additionally, the ALJ's determination is buttressed by the opinion of Dr. Canterbury, who determined that claimant could sit, stand, and walk without difficulty, and lift objects of moderate weight. (Tr. 171). Thus, this argument lacks merit.

Next, claimant argues that the ALJ arbitrarily relied on the grids to find him not disabled. [rec. doc. 11, p. 7]. However, the record shows that the ALJ relied on the vocational expert's testimony to support his finding that claimant could return to his previous work as a security guard and newspaper carrier. (Tr. 15). Additionally, Because the ALJ found at Step 4 that claimant was able to return to his past relevant work, it was not necessary for him to proceed to Step 5, where the burden shifts to the Commissioner to show that the claimant can perform other substantial work. A finding that the claimant is not disabled at any step is conclusive and ends the inquiry. *Masterson*, 309 F.3d at 272. Thus, this argument lacks merit.

Finally, claimant asserts that the ALJ's finding as to credibility was erroneous. [rec. doc. 7]. The ALJ found that claimant's condition did not appear to be as severe and limiting as he had alleged, because, among other things, he had not sought regular treatment and had a history of noncompliance with his medications. [rec. doc.

11

15]. The records from claimant's physicians show that claimant's diabetes and hypertension were controlled when he took his medication, but that he was not always compliant. (Tr. 168, 176, 182, 209, 218, 233). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Additionally, the consultative examiner, Dr. Canterbury, noted that there were certain inconsistencies in claimant's examination. (Tr. 172). Thus, the ALJ's finding as to credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS**

**REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION***, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 24th day of September, 2008, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE